IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARTHA LOCKETT, § | | |
|       *Plaintiff,* § | | |
| § | | |
| Vs. § | Number: | |
| § | | |
| HOUSTON INDEPENDENT § | | |
| SCHOOL DISTRICT § | | |
| § | | |
| *Defendant*§ | Jury Trial Requested | |

## PLAINTIFF'S ORIGINAL COMPLAINT

This is a proceeding for civil enforcement of lawful rights secured by Title VII of

The Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq., as amended, prohibiting

The unlawful employment practice of sex discrimination, (Gender), harassment

And in retaliation for her protected activity.

This is also a proceeding for civil enforcement of lawful rights secured by the Age

Discrimination in Employment Act (ADEA) prohibiting discrimination on account

of a person's Age.

## JURISDICTION

The Jurisdiction of this Honorable Court is invoked pursuant to 28 U.S.C. §

1331 because the issues in this case raise federal questions under Title VII of the

Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq., as amended, and the Age

Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* (2000).

BACKGROUND

Martha Lockett is a 63 year old African American female, she is a registered Nurse licensed by the State of Texas. ( hereinafter  sometimes referred to as Nurse Lockett) .  While Plaintiff was a school nurse for Houston Independent School District (HISD) she sought a transferred and was assigned to North Forest High School, where she worked under the Supervision of Principal Pamela Farinas. Prior to being assigned to North Forest High school, Nurse Lockett had been an employee of HISD as a School Nurse for ten years at the end of the 2012-2013 school years; prior to being transferring to North Forest High school Nurse Lockett's performance evaluations had  been exemplary and met and/or exceeded the Defendant's legitimate expectation.

 HISD was ordered by the state of Texas to take over the North Forest School district starting with the 2013-2014 school year ,at that time Nurse Lockett had been a nurse for thirty-eight years and a school nurse for  HISD since 2004, she was nearing retirement and she  decided that she wanted to work at the "in need school" in order to give back to the community in her final years of employment.

Nurse Lockett had most recently been assigned to Carnegie Vanguard High School for Gifted and Talented Students and had also worked at T. H. Rogers School, where children were profoundly impaired. Nurse Lockett had no performance problems in her first semester at the newly assigned position of North Forest High school. However, Principal Pamela Farinas, made allegations against her that led to the termination of her employment HISD and the events on Farinas relined on apparently took place during second semester of the 2013-2014 HISD school year.

At North Forest High School, in the Special Education department, three were classes of special education students. Each special education classroom is supposed to have a teacher of record and a teaching assistant. There is also supposed to be a teaching assistants employed for the head of the department, making a total of four teaching assistants in the department. All teaching assistants and the teachers in the special education department were allowed to, and were capable of meeting the needs of the special needs students such as changing a student's diaper. HISD has approximately 16,000 enrolled special needs student, these special needs students are assigned to schools near their resident when possible and each school to which these special needs students are assigned it was to be a schools and a class rooms equipped with the tools necessary to accommodate the special needs students so

assigned. Each special needs student is required to have has an ARDS, that acronym stand for admission, review, and dismissal process. Each school is required to have an ARD/IEP, (IEP acronym for individualized education program). HISD schools that have special needs students is required to have an ARDS, admission, review, and dismissal process committee which is convened for the purpose of developing an IEP, individualized education program for each special needs student. Apparently State and Federal law required that anyone who has knowledge about the student such as teachers and parents and others that have a responsibility of working with the student attend the ARD/IEP meetings, if someone in a particular school is expected to provide a service to the student, then they would attend those ARDs committee meetings such as a special education teacher, a general education teacher, and the parent are required members of the ARDs IEP meeting and the principal or a designee is also required to be at the such meetings. If the special needs student has a need for medical services, the school nurse attends the ARDS/IEP committee meeting either present physically or provide written input into the meeting and input into the planning process, i.e. written input ahead of the meeting the nurse could provide some information about how the student's medical needs were to be met during the course of the year and what additional needs the nurse anticipates in the following year so that that could be considered in the program planning process of committee meeting. If the

special needs student has a medical need, they would have such medical information.  If there are medical needs such is clearly outlined a medical record as well as doctor's orders for that student to which the school nurse can refer.

Each school in HISD is assigned a school nurse who is expected to deliver routine medical services of to students and other medical services either in emergency situations or medical services pursuant to doctors orders as outlined in each students ARDS file that is maintained by the assigned school. In the Fall, 2013 semester there were apparently three students attending North Forest School to which Nurse Locket was assigned who wore diapers and needed them changed by a third person.  All three of the aforesaid special needs students were regularly changed by a female HISD employees only. Although Principal Pamela Farinas, was responsible for maintaining ARDS/IEP records on each special needs student she negligently failed to maintain such records however there were no doctors orders or ARDS committee minutes maintained on any of the special needs students to which Nurse Lockett could view. Ironically the special needs students, male and female, were brought to the nurse's office for diaper changing. These special needs student at North Forest were brought either by their teacher or their TA who would change such diapers in the Nurses office area.

In the spring, 2014 semester, there was apparently a staffing change in the special education department of North Forest High School.  One of the special education teachers, Mr. Roberts and a teaching assistant, Ms. Valle, left HISD's employment. Valle who was a teaching assistant (TA) had  changed diapers of the special needs students on a regular basis, after Valle's departure from HISD , rather than hiring a replacement TA  Principal Pamela Farinas, merely promised to hire a replacement for Valle but in the intervening time period Farinas mandated in writing that Nurse Lockett assume the responsibility to change diapers without providing Nurse Lockett with Doctors orders or any ARDS/IEP committee minutes which were apparently illegal and outside the scope of Nurse Lockett's  responsibilities and job description ,nonetheless Plaintiff initially followed Farinas orders and performed the task of changing some diapers of the special needs students. Principal Pamela Farinas, rather than hiring a TA that position was replaced with a long term female substitute teacher, a Ms. Julia Collins, who was under age 50. Ironically Principal Pamela Farinas excluded Collins from changing diapers. Therefore the special education department at North Forest apparently was left with one female teaching assistant who had the diaper changing responsibility along with Nurse Lockett, both of whom were females and over age 50.  Although the male TA's in the department was responsible for changing diapers as part of his assigned duties he was  exempted diaper changing responsibilities. Accordingly, the female TA

remaining in the Special education depart of North Forest and Plaintiff were the only individuals in the special education department mandated by Principal Pamela Farinas, to change diapers of the special education life skill students while male teaching assistant were excluded from performing such duties.

The diaper changing duties apparently led to the female TA developing stomach problems and her frequent absences caused Nurse Lockett to do all diaper changes. Principal Pamela Farinas claims that she was unaware of whether the substitutes could change student's diapers. Ironically, Farinas contacted Gwendolyn Johnson from HISD administration and claim to have asked whether she was allowed to direct her on campus nurse to change a diaper. Farinas claims Johnson told her that she could force nurse Lockett to change diapers although such as not part of her job description nor was such a medical undertaking and there no required ARDS meeting minutes.  Nonetheless, Principal Pamela Farinas forced Nurse Lockett to perform the duties of the teaching assistant and to take on the entire diaper changes duties whenever the teaching assistant was absent rather than hiring a TA or calling a teacher assistant from another school in HISD.

During February of 2014, although such was outside the scope of Nurse Locket duties and without the benefit of doctors orders or ARDs minutes certifying a medical necessity for the diaper change to be performed by a licensed nurse a female student was brought by Collins, a substitute teacher to Nurse Lockett,

Collins demanded that Nurse Lockett perform a diaper change and wanted the diaper change based on a perceived timeline set by the substitute teacher. At the time of the demand of the substitute teacher, Nurse Lockett was meeting with a parent in the Clinic and Nurse Lockett told the substitute teacher that she could not change the diaper at that time. The substitute, without seeking or obtaining clarification from Nurse Lockett, or presenting Nurse Lockett with doctors orders or ARDs minutes. Collins reported Plaintiff Farinas that Nurse Lockett's outright refused to change the special needs students diaper. Although changing the student's diaper was the responsibility of Collins as the substitute, she did not change the diaper herself, Collins took the student from the clinic and apparently complained to Principal Farinas who called Nurse Lockett and instructed her to come to her office. Once Nurse arrived at Farinas' office, Farinas repeated to her several times "so you are not going to change this students diaper ". Nurse Lockett's response was that she had to leave to go to the doctor advising Principal Farinas that she was ill and needed to see her doctor. Nonetheless, Principal Pamela Farinas continued to ask Nurse Lockett "was she going to change the diaper", Nurse Lockett did not outright refuse to change the diaper but again explained to Principal Farinas that she was ill and was on her way to see her doctor. Nurse Lockett explained Farinas that she could not; she was already leaving to go to her doctor's appointment. Significantly, the reason Nurse Lockett

was going to her doctor was for was acute hypertension. Nurse Lockett left the school and went to her doctor where she learned that her health condition was so serious that her doctor put her on emergency FMLA for up to 12 weeks. Pleading further: On or about March 11th, 2014, a teacher assigned to North Forest High school had an epileptic seizure. That teacher's condition was serious enough and lasted long enough such that an ambulance was called and EMT's were able to treat the teacher condition. When the teacher who suffered the seizure was asked if she wanted to go to the hospital she declined. Farinas then apparently decided not to let the teacher drive home, then took the teacher's her keys and advised Nurse Lockett to have the teacher picked up by someone and driven home. The teacher was eventually escorted to the Nurse's Office; Farinas gave a directive to Nurse Lockett to keep the teacher's keys in her possession no matter what the teacher said or claimed Nurse Lockett was instructed to keep possessions of the keys again which was outside her scope of employment and was likely an illegal directive for a school nurse. Nurse Lockett called the contact person for the teacher who suffered the seizure, a male person and he agreed to pick up the ill teacher. Nurse Lockett monitored the teacher in the clinic while waiting for her ride to pick up the teacher. Eventually, the teacher talked to someone on her private cell phone. Nurse Lockett escorted the teacher to the parking lots to see if her ride had arrived. When Nurse Lockett and the subject teacher arrived at the first parking lot in the

front of the school, the person designated pick up and to take the teacher home was not present. Nurse Lockett therefore took it upon herself to quickly check another parking area, leaving the ill teacher in a conversation with another faculty member. When Nurse Lockett returned the teacher had left, apparently in her own car. Nurse Lockett immediately reported to Farinas that the subject teacher had left the school premises after which Principle Farinas immediately went into a rage and accused Nurse Lockett of insubordination for giving or returning the teacher's keys and allowing the teacher to leave the premises. It was On March 12, Plaintiff went to see Dr. Hickman after her medical doctor who diagnosed her as having acute adverse medical condition her doctor immediately placed Nurse Lockett on FMLA. Nurse Lockett then went to Human Resources and turned in all of her paper work regarding FMLA, Nurse Lockett then received word from Human Resources that her leave for FMLA was approved. In the meantime, Nurse Lockett had not reported to work since March 11. Nonetheless, on March 26th, 2014, ***while Nurse Lockett was on approved Family Medical Leave***, Farinas directed Nurse Lockett to attend Conference for the Record on March 28th, 2014. Plaintiff did not get a timely notice of the conference and did not attend as she was on FMLA. On April 2, 2014, while Nurse Lockett was still on approved family medical leave, Farinas sent another letter to her again via certified mail, advising her that she was recommending that Nurse Lockett be terminated at the end of her

contract. Nurse Lockett was ultimately terminated on or about September 9, 2014, Nurse Lockett alleges that her sex was a motivating factor for her termination even though there may have been other reasons. Nurse Lockett also alleges that but for her age she would not have been terminated, all to her damage and for which she sues.

## F. Actions Precedent to Plaintiff filing her Complaint of Sex and Age Discrimination

On February 9, 2015, Nurse Lockett initiated a charge of discrimination by filing the same with the Texas Workforce Commission which is a duel filing with EEOC. In her charge of discrimination Nurse Lockett is claiming that she was subjected to several unlawful employment practices by the Defendant, specifically she claimed Sex and Age Discrimination. Plaintiff is claiming that an unlawful employment practice in is established when the complainant demonstrates that her sex , was a motivating factor for an employment practice about which she is complaining, even if other factors also motivated the practice. Plaintiff is also claiming that but for her age she would not have been terminated and subjected to unlawful employment practices about which she complains.

Plaintiff requested a right to sue and was issued such right to sue dated March 22, 2016. Accordingly Plaintiff instant lawsuit is timely filed.

## G. Sex and Age Discrimination

The Defendant sought to and indeed did orchestrated a set of circumstances that placed Nurse Lockett in position which would arguably allow principal Farinas to discriminate against her and to articulate an alleged legitimate reason for terminating Nurse Lockett's employment with HISD as a Registered and licensed Medial Nurse with North Forest High School. In this regard, Farinas demanded that Nurse Lockett to perform functions that were not part of her assigned duties and were without doctors orders or any illegally without ARDs committee minutes and not a Professional School nursing responsible while at the same time not requiring male employees or younger females to perform the same less desirable task all without a justification and not according to law. Nurse Lockett alleges that principal Farinas' actions as stated above were motivated by her sex and would not have but for her age she would not have sought or require Nurse Lockett to perform such

non nursing duties but for her sex and age. Principal Farinas at some point even directed Nurse Lockett to physically restrain an HISD school teacher or falsely imprison a School Teacher who had experienced an illness while in the course and scope. Further while Nurse Lockett was on Family Medical Leave of Absence (FMLA) commencing March 12, 2014, about which Principal Farinas knew or should have known through the exercise of her responsibilities and reasonable diligence that Nurse Lockett was on FMLA. Without regard to Nurse Lockett being on FMLA, Principal Farinas sought to require Nurse Lockett to be present in a conference on March 28, 2014; such notification was apparently sent by an email Memo dated March 26, 2014. Finally on April 2, 2014, while Nurse Lockett was still on FMLA principal Farinas recommended her termination. All to Plaintiff's damages for which she now sues.

## H. Damages

Plaintiff's damages for which she now sues and is seeking include actual damages and reinstatement, past lost pay, future lost pay, front pay and the value of all benefits that would have flowed to her and all other damages allowed by law

including damages for the willful violation of this nations anti age discrimination laws and reasonable attorney fees.

### I. PUNITIVE AND COMPENSATORY DAMAGES

Plaintiff would show that this is a case in which exemplary damages can be awarded because of the Defendant unlawful willfully discriminated against and harassed her on account of her Age discrimination, Sex and therefore Plaintiff would ask this Honorable Court and Jury, if the law allows, to award her exemplary damages against Defendant to punish the Defendant in the amount to be determined by the Jury, as an example to the Defendant that such conduct will not be tolerated by the people of this nation and so that the Defendant will not treat future employees in the same or similar fashion as the Defendant has treated Plaintiff.

Plaintiff would show that because of Defendant's unlawful employment practices and other conduct, Plaintiff was also caused to suffer mental and emotional pain, suffering, inconvenience, loss of enjoyment of life, loss of sleep, mental anguish and generally reduction in her standard of living for which she seeks compensatory damages in an amount to be determined by the court and jury.

### J. ATTORNEY'S FEES

Plaintiff sues the Defendant for all reasonable attorneys' fees at an hourly rate consistent with her counsel's experience and cost incurred in the prosecution of this suit.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully invokes the remedial powers of the court as provided for according to applicable law prohibiting sex and age discrimination in Employment against individuals based her status and prays for the following:

a) Defendant be permanently enjoined from discriminating, and/or retaliating against Plaintiff on any basis forbidden by law under the above applicable statutes.

b) Defendant be ordered to compensate, reimburse, and make Plaintiff whole for all past and future loss wages and benefits Plaintiff would have received had it not been for Defendant's unlawful employment practices including, but not limited to, past lost pay, future loss wages, front pay and loss benefits, training, promotions, reinstatement and seniority. Plaintiff further ask that she be awarded all benefits illegally denied her from the date Plaintiff was Discriminated against her until the date Plaintiff is tendered substantially equivalent employment or monetary damages with interest on the withheld or denied amounts to the date of payment.

c) The court grants such additional equitable and legal relief deemed to be appropriate and that which is proper and just.

d) The court award to Plaintiff the costs and expenses of this action and award Plaintiff reasonable attorney fees according to law.

        Respectfully submitted

        COOPER & COOPER,
        Attorneys at Law
        /s/Gordon R. Cooper, II
        _____
        GORDON R. COOPER, II
        State bar No.: 04785000
        3620 South Macgregor Way
        Houston, Texas 77021
        Telephone: (713) 747-1446
        Email: cooperhou@aol.com