IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MARTHA LOCKETT, §
§
Plaintiff, §
§
v. § CIVIL ACTION NO. H-16-1667
§
HOUSTON INDEPENDENT §
SCHOOL DISTRICT, §
§
Defendant. §

## MEMORANDUM, RECOMMENDATION, AND ORDER

Pending before the court[1] are Defendant Houston Independent School District's ("Defendant") Motion for Summary Judgment (Doc. 14) and Objections to Plaintiff Martha Lockett's ("Plaintiff") Summary Judgment Evidence (Doc. 25). The court has considered the motion, the objections, Plaintiff's responses (Docs. 23, 26), Defendant's reply (Doc. 25), all other relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Defendant's motion for summary judgment be **DENIED.** The court **OVERRULES IN PART** and **SUSTAINS IN PART** Defendant's objections to summary judgment evidence.

### I. Case Background

Plaintiff filed this employment action alleging discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. See Doc. 16, Ord. Dated Nov. 15, 2016.

VII")[2] and the Age Discrimination in Employment Act ("ADEA").[3]

## A.  **Factual Background**

Plaintiff is a 63-year-old registered nurse.[4]  She began working for Defendant as a school nurse in 2004.[5]  Plaintiff requested a transfer to North Forest High School ("NFHS") for the 2013-2014 school year because she was "motivated by an opportunity to give back to the educational community."[6]  At NFHS, Plaintiff worked under the supervision of principal Pamela Farinas ("Farinas").[7]

The present dispute arose during the 2013-2014 school year.[8] During that time, NFHS had three special education students, including J.E., who required diaper changes, which took place at a changing station in Plaintiff's office.[9]  Farinas stated in her affidavit that J.E.'s father informed her during the fall semester of 2013 that he did not want a male to change his daughter's diaper because of concerns relating to the presence of marks around her

---

[2]      42 U.S.C. §§ 2000e-2000e-17.

[3]      29 U.S.C. §§ 621-634.

[4]      See Doc. 23-1, Ex. A to Pl.'s Resp. to Def.'s Mot. for Summ. J., Decl. of Pl. p. 1.

[5]      See id.

[6]      Id.

[7]      See id.

[8]      See id. p. 2.

[9]      See id.

genital area.[10]   Farinas averred that those concerns led her to
direct male employees to refrain from changing J.E.'s diaper.[11]
However, Plaintiff averred that she was never told about concerns
about the presence of marks in J.E.'s genital area or given access
to J.E.'s Individual Education Plan.[12]

At the end of the fall semester, the female teaching assistant
who previously held the duty of changing J.E.'s diaper ceased
employment with Defendant, and this duty was transferred to another
female teaching assistant, Dale Staggers ("Staggers").[13]   However,
Staggers was chronically absent from work.[14]   Because of Staggers'
frequent absences, Farinas asked Gwen Johnson ("Johnson"),
Defendant's manager of health and medical services, if Plaintiff
could be properly assigned J.E.'s diaper changing duties in a
reserve role, and Johnson confirmed the assignment.[15]   As a result,
Farinas had Plaintiff sign a document agreeing to serve as a back

---

[10]    See Doc. 14-10, Ex. 10 to Def.'s Mot. for Summ. J., Aff. of Farinas
p. 1; Doc. 23-16, Ex. B-8 to Pl.'s Resp. to Def.'s Mot. for Summ. J., Dep. of
Farinas pp. 25-27, 69-70.

[11]    See Doc. 14-10, Ex. 10 to Def.'s Mot. for Summ. J., Aff. of Farinas
p. 2.

[12]    See Doc. 23-1, Ex. A to Pl.'s Resp. to Def.'s Mot. for Summ. J.,
Decl. of Pl. p. 4.

[13]    See id. p. 2.

[14]    See id.

[15]    See Doc. 14-10, Ex. 10 to Def.'s Mot. for Summ. J., Aff. of Farinas
p. 2.

up to Staggers for J.E.'s diaper changes.[16]

Around the same time, J.E.'s male teacher left NFHS and was replaced by a long-term substitute teacher, Juilia Collins ("Collins"), a female over the age of forty.[17] Farinas states in her affidavit that because Collins was not a permanent employee and therefore unfamiliar with J.E., she left the diaper-changing assignment to Staggers and, in Staggers' absence, to Plaintiff.[18]

On February 25, 2014, Collins escorted J.E. to Plaintiff's office for a diaper change.[19] Plaintiff averred that she could not perform the diaper change because she was busy and that she told Collins that she was not available to change J.E.'s diaper.[20] Collins wrote a letter to Tiffany Wilcox, the assistant principal, stating that Plaintiff immediately stopped her upon entering the nurse's office and said, "I am not doing it."[21] The next day, Collins returned with J.E. to Plaintiff's office for a diaper

---

[16]    See Doc. 23-1, Ex. A to Pl.'s Resp. to Def.'s Mot. for Summ. J., Decl. of Pl. p. 2.

[17]    See Doc. 14-10, Ex. 10 to Def.'s Mot. for Summ. J., Aff. of Farinas p. 2.

[18]    See id.

[19]    See Doc. 14-12, Ex. 12 to Def.'s Mot. for Summ. J., Letter from Collins to Tiffany Wilcox Dated Feb. 27, 2014 p. 1.

[20]    See Doc. 23-1, Ex. A to Pl.'s Resp. to Def.'s Mot. for Summ. J., Decl. of Pl. p. 3.

[21]    See Doc. 14, Ex. 12 to Def.'s Mot. for Summ. J., Letter from Collins to Tiffany Wilcox Dated Feb. 27, 2014 p. 1.

change.[22]    Plaintiff told Collins that she was unable to do so

because she was about to leave for a doctor's appointment.[23]

Farinas learned of the situation and called Plaintiff into her

office to direct her to change the diaper.[24]    Plaintiff repeated

that she needed to leave for a doctor's appointment and did not

change J.E.'s diaper at that time.[25]  On March 3, 2014, Farinas sent

Plaintiff a written reprimand for refusing to change J.E.'s

diaper.[26]

On March 11, 2014, a teacher suffered a seizure at NFHS.[27]

Paramedics arrived and treated the teacher, who refused to be

transported to the hospital.[28]  Farinas directed Plaintiff to keep

the teacher's car keys and to monitor her until an emergency

contact arrived to pick her up.[29]    However, the teacher took

possession of her keys and left campus.[30]  Plaintiff averred that

the teacher left while she checked the parking lot to see if the

---

[22]    See Doc. 23-1, Ex. A to Pl.'s Resp. to Def.'s Mot. for Summ. J.,
Decl. of Pl. p. 3.

[23]    See id.

[24]    See id. pp. 3-4.

[25]    See id.

[26]    See Doc. 23-4, Ex. A-3 to Pl.'s Resp. to Def.'s Mot. for Summ. J.,
Conference Regarding Conduct & Failure to Follow Directives pp. 1-2.

[27]    See Doc. 23-1, Ex. A to Pl.'s Resp. to Def.'s Mot. for Summ. J.,
Decl. of Pl. p. 4.

[28]    See id.

[29]    See id.

[30]    See id.

teacher's emergency contact had arrived.[31]  On March 12, 2014, Farinas issued Lockett a second reprimand for failing to keep the teacher from driving off campus.[32]

That same date, Plaintiff visited her doctor who diagnosed her with acute hypertension and recommended that she take temporary leave from work.[33]  Plaintiff successfully applied for leave under the Family Medical Leave Act ("FMLA"),[34] beginning on March 12, 2014 and ending on May 15, 2014.[35]  Once granted leave, Plaintiff did not report back to Farinas, who remained unaware of Plaintiff's leave status until after March 31, 2014.[36]  On March 26, 2014, Plaintiff received notice from Farinas of a disciplinary conference, which Plaintiff did not attend.[37]

On April 2, 2014, Farinas recommended non-renewal of Plaintiff's contract for failing to abide by two express directives

---

[31]    See id.

[32]    See Doc. 14-15, Ex. 15 to Def.'s Mot. for Summ. J., Conf. Regarding Conduct & Failure to Follow Directives pp. 1-2.

[33]    See Doc. 23-1, Ex. A to Pl.'s Resp. to Def.'s Mot. for Summ. J., Decl. of Pl. p. 4.

[34]    29 U.S.C. §§ 2601-2654.

[35]    See Doc. 23-6, Ex. A-5 to Pl.'s Resp. to Def.'s Mot. for Summ. J., Emp.'s Illness Fam. & Med. Leave Designation Notice p. 1.

[36]    See Doc. 23-1, Ex. A to Pl.'s Resp. to Def.'s Mot. for Summ. J., Decl. of Pl. p. 4; Doc. 23-16, Ex. B-8 to Pl.'s Resp. to Def.'s Mot. for Summ. J., Dep. of Farinas pp. 22-23.

[37]    See Doc. 23-1, Ex. A to Pl.'s Resp. to Def.'s Mot. for Summ. J., Decl. of Pl. p. 4.

and follow Defendant's absence-reporting procedures.[38]  On April 11, 2014, Defendant sent Plaintiff another letter notifying her that the proposal to not renew her contract was pending before Defendant's Board of Education.[39]  On September 5, 2014, Plaintiff received a letter from Defendant's Board of Education officially terminating her contract.[40]

## B.  **Procedural Background**

On February 9, 2015, Plaintiff submitted an employment discrimination claim to the Texas Workforce Commission ("TWC").[41] On March 31, 2015, Plaintiff also filed a formal charge of discrimination with the TWC.[42]

On June 10, 2016, Plaintiff filed the present action pursuant to Title VII and the ADEA, alleging gender and age discrimination.[43] Plaintiff asked that Defendant be enjoined from discriminating or retaliating against her and that she be compensated for all past and future loss wages and benefits she would have received if not

---

[38]    See Doc. 14-16, Ex. 16 to Def.'s Mot. for Summ. J., Conf. Summ. p. 1.

[39]    See Doc. 23-7, Ex. A-6 to Pl.'s Resp. to Def.'s Mot. for Summ. J., Letter from Terry Grier to Pl. Dated Apr. 11, 2014 pp. 1, 2.

[40]    See Doc. 14-5, Ex. 5 Def.'s Mot. for Summ. J., Non-Renewal of Term Contr. p. 1.

[41]    See Doc. 14-17, Ex. 17 to Def.'s Mot. for Summ. J., Employment Discrimination Compl. p. 1.

[42]    See Doc. 14-18, Ex. 18 to Def.'s Mot. for Summ. J., Charge of Discrimination p. 1.

[43]    See Doc. 1, Pl.'s Compl. p. 1.

for the alleged discrimination.[44]

On November 4, 2016, Defendant filed its motion for summary judgment.[45] Defendant argues that Plaintiff did not file her complaint with the EEOC within the 300-day window, she cannot establish a prima facie case for gender or age discrimination, and she cannot show that Defendant or Farinas acted with discriminatory motive.[46] On November 25, 2016, Plaintiff responded to the motion for summary judgment, arguing that her employment discrimination claim was timely filed, she successfully asserted a prima facie case for both gender and age discrimination, and Defendant's reasons for terminating Plaintiff's contract are pretextual.[47]

On December 7, 2016, Defendant filed objections to Plaintiff's summary judgment evidence and a reply to Plaintiff's response.[48] On December 14, 2016, Plaintiff responded to Defendant's objections.[49]

## II. Evidentiary Objections

Defendant challenges Plaintiff's summary judgment evidence. Before addressing the merits of the dispositive motion, the court

---

[44]   See id. p. 15.

[45]   See Doc. 14, Def.'s Mot. for Summ. J.

[46]   See id. p. 2.

[47]   See Doc. 23, Pl.'s Resp. to Def.'s Mot. for Summ. J. pp. 13-15, 22.

[48]   See Doc. 25, Def.'s Objs. to Pl.'s Summ. J. Evid.

[49]   See Doc. 26, Pl.'s Resp. to Def.'s Objs. to Pl.'s Summ. J. Evid.

must first address the evidentiary objections.

## A. Legal Principles

A party must support its factual positions by citing to particular evidence in the record. Fed. R. Civ. P. 56(c)(1). The court need only consider the cited materials, although it may consider other materials as well. Fed. R. Civ. P. 56(c)(3). Affidavits supporting summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Conclusory allegations, unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent evidence. Eason v. Thaler, 73 F.3d 1322, 1325 (5th Cir. 1996)(citing Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992)); Forsyth v. Barr, 19 F.3d 1527, 1533 (5th Cir. 1994)(quoting Krim v. BancTexas Grp., Inc., 989 F.2d 1435, 1449 (5th Cir. 1993)). Federal Rule of Civil Procedure 56(c)(2) allows a movant to object to exhibits that "cannot be presented in a form that would be admissible in evidence." The Federal Rules of Evidence determine whether the summary judgment evidence is admissible.

## B. Discussion

The court now turns to the specific objections to Plaintiff's declaration and response.

### 1. Plaintiff's Declaration

Defendant objects to Plaintiff's declaration, arguing that it includes statements that are "conclusory, unsupported by personal knowledge, or that contradict her own deposition testimony."[50] In its first, second, third, and fourth objections, Defendant argues that Plaintiff's assertions regarding personnel assignments and employee discipline are beyond her personal knowledge.[51] In the fifth, sixth, seventh, and eighth objections, Defendant argues that Plaintiff's statements regarding the scope of Defendant's policy are conclusory opinions and not competent summary judgment evidence.[52]

With regard to Defendant's first four objections, while conclusory allegations, unsubstantiated assertions, improbable inferences, and unsupported speculation are not admissible, a party's testimony about an organization's routine practice is not excluded under the Federal Rules of Evidence and may be relevant. Plaintiff's declaration refers to her observations at NFHS and conclusions she has drawn from those observations. As a nurse whose office included the space where students' diapers were changed, Plaintiff's declaration speaks to her general knowledge of the duties and events that took place at NFHS based on her personal observations. Therefore, the court find that Plaintiff's

---

[50]    Doc. 25, Def.'s Objs. to Pl.'s Summ. J. Evid. p. 1.

[51]    See id.

[52]    See id. p. 3.

10

statements related to personnel assignments and employee discipline are supported by personal knowledge.

With regard to Defendant's fifth, sixth, seventh, and eighth objections, the court finds that Plaintiff has failed to provide evidentiary support for her statements concerning the scope and interpretation of Defendant's policies. Without further information to support Plaintiff's declaration, the court will disregard Plaintiff's representations of Defendant's policies.

## 2. Plaintiff's Response

Defendant challenges Plaintiff's statement of facts in her response, arguing that it contains statements unaccompanied by specific record citations and that the general citation to Plaintiff's declaration is insufficient.[53] However, Plaintiff's general citation is sufficient because all statements lacking a specific citation are supported by Plaintiff's declaration, which is structured similarly to the statement of facts, so the court does not have to comb through the record in search of evidence.

## III. Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir.

---

[53]  See id. p. 5.

2003).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.  Anderson, 477 U.S. at 250; TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002).

The movant must inform the court of the basis for the summary judgment motion and point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992).  If the moving party can show an absence of record evidence in support of one or more of the elements of the case for which the nonmoving party bears the burden, the movant will be entitled to summary judgment.  Celotex Corp., 477 U.S. at 322.  In response to a showing of lack of evidence, the party opposing summary judgment must go beyond the pleadings and proffer evidence that establishes each of te challenged elements of the case, demonstrating that genuine issues of material fact do exist that must be resolved at trial.  Id. at 324.

When considering the evidence, "[d]oubts are to be resolved

in favor of the nonmoving party." <u>Evans v. City of Houston</u>, 246 F.3d 344, 348 (5th Cir. 2001); <u>see also</u> <u>Boston Old Colony Ins. Co. v. Tiner Assocs. Inc.</u>, 288 F.3d 222, 227 (5th Cir. 2002). The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." <u>Honore v. Douglas</u>, 833 F.2d 565, 567 (5th Cir. 1987).

However, the nonmoving party must show more than "some metaphysical doubt as to the material facts." <u>Meinecke v. H&R Block of Houston</u>, 66 F.3d 77, 81 (5th Cir. 1995). Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden. <u>Brown</u>, 337 F.3d at 541; <u>Ramsey v. Henderson</u>, 286 F.3d 264, 269 (5th Cir. 2002). The court must grant summary judgment if, after an adequate period of discovery, the nonmovant fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp.</u>, 477 U.S. at 322.

## IV. Discussion

Defendant argues it is entitled to summary judgment because Plaintiff failed to: (1) properly exhaust her administrative remedies; (2) establish a prima facie case of age or gender discrimination; and (3) show that Defendant's legitimate, nondiscriminatory reasons for termination were pretextual.

## A. **Administrative Remedies**

In Texas, a state with an agency that has authority similar to that of the EEOC, a complainant must file a charge of discrimination within 300 days of learning of the alleged discriminatory practice. Huckabay v. Moore, 142 F.3d 233, 238 (5th Cir. 1998); see also 42 U.S.C. § 2000e-5(e)(1); Webb v. Cardiothoracic Surgery Assocs. of N. Tex., 139 F.3d 532, 537 (5th Cir. 1998).

Plaintiff filed a complaint with the TWC on February 9, 2015. Defendant argues that the 300-day limitations period bars Plaintiff from bringing claims based on any acts that occurred before April 15, 2014. However, Plaintiff did not learn of Defendant's decision to terminate her contract until September 5, 2014. The limitation period begins to run on the date the employee receives notice of termination, not on the final date of employment. Allen v. Cty. of Galveston, Tex., 352 F. App'x 937, 939 (5th Cir. 2009) (unpublished) (citing Elliott v. Grp. Med. & Surgical Serv., 714 F.2d 556, 563 (5th Cir. 1983)). Therefore, Plaintiff timely filed her discrimination claim within 300 days of September 5, 2014.

## B. **Discrimination Claims**

Title VII prohibits employers from "discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42

U.S.C. § 2000e-2(a).  The ADEA, similar to Title VII, prohibits employers from refusing to hire, terminating, or otherwise "discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment because of such individual's age."  29 U.S.C. § 623(a).

In the absence of direct evidence, courts analyze Title VII and ADEA discrimination claims under the burden-shifting approach first articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and modified in Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003).  Under this "modified McDonnell Douglas approach," a plaintiff may trigger a presumption of discrimination by establishing a prima facie case.  Rachid v. Jack In The Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004).  If the plaintiff establishes a prima facie case, the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for its action.  Haire v. Bd. of Sup'rs of La. State Univ. Agric. & Mech. Coll., 719 F.3d 356, 362-63 (5th Cir. 2013).  If the defendant provides such a reason, the burden shifts back to the plaintiff to show that the defendant's reason is simply a pretext for discrimination.  Id. at 363.  Pretext is established by showing that the employer's decision was more likely motivated by a discriminatory motive, such as through evidence of disparate treatment.  Id.

Because there is no direct evidence, Plaintiff must first meet her burden of production under the McDonnell Douglas approach to

survive Defendant's motion for summary judgment.

### 1. Gender Discrimination

Defendant argues that Plaintiff failed to establish her prima facie case for gender discrimination. A prima facie case for gender discrimination requires the plaintiff to show that: (1) she is a member of a protected class; (2) she was qualified for the position sought; (3) she was subject to an adverse employment action; and (4) she was replaced by someone outside her protected class or was treated less favorably than other similarly situated employees outside her class. Haire, 719 F.3d at 363 (citing Fahim v. Marriott Hotel Servs., 551 F.3d 344, 350 (5th Cir. 2008)).

Defendant agrees that Plaintiff satisfies the first two elements of the prima facie case. However, Defendant argues that Farinas' directive that Plaintiff change diapers is not an adverse employment action, and Plaintiff cannot demonstrate that she was treated less favorably than similarly-situated employees. The adverse employment action asserted by Plaintiff is the termination of her employment contract, not Farinas' directive to change diapers. Plaintiff's discharge clearly constitutes an adverse employment action. See Lopez v. Kempthorne, 684 F. Supp.2d 827, 885 (S.D. Tex. 2010) (quoting Washington v. Veneman, 109 F. App'x 685, 689 (5th Cir. 2004)(unpublished)) (stating that "only 'ultimate employment decisions' such as . . . discharging . . .qualify as adverse employment actions for a disparate treatment action based

on . . . gender."). Therefore, Plaintiff has raised a genuine issue of material fact on the third element.

As for the fourth element, Plaintiff was not replaced by someone outside of her protected class. However, Plaintiff has identified other NFHS employees who were capable of performing diaper changes, refused to do so, and were not terminated for their refusals. Defendant argues that Plaintiff cannot successfully identify any similarly situated employees because she did not identify another NFHS-employed nurse; however, the similarly situated analysis does not require identical circumstances. Instead, an employee will be found similarly situated when he or she has the same job or responsibilities, shares the same supervisor, or has essentially comparable violation histories. Turner v. Kan. City S. Ry. Co., 675 F.3d 887, 893 (5th Cir. 2012) (citing Lee v. Kan. City. S. Ry. Co., 574 F.3d 253, 260 (5th Cir. 2009)).

Plaintiff identified Augustus Belser, Elliot Johnson, and Corey Roberts as similarly situated employees who are outside of the protected group and were not terminated for failing to change diapers.[54] All three men were employed in the special education department at NFHS and had the same supervisor, Farinas, as Plaintiff.[55] None of them were required to perform diaper changes,

---

[54] See Doc. 23-1, Ex. A to Pl.'s Response to Def.'s Mot. for Summ. J., Decl. of Pl. p. 2.

[55] See id.

and none were terminated for failing to change diapers.[56]  As such,

Plaintiff has provided evidence to raise a genuine issue of

material fact on the fourth element of her gender discrimination

claim.

## 2.  Age Discrimination

The first three elements of a prima facie case for age

discrimination under the ADEA are identical to the first three

elements for a gender discrimination claim.  See Bauer v. Albemarle

Corp., 169 F.3d 962, 966 (5th Cir. 1999) (quoting Bodenheimer v. PPG

Indus., Inc., 5 F.3d 955, 957 (5th Cir. 1993)).  Again, Defendant

does not challenge that Plaintiff satisfies the first two elements

because, as a person over forty years of age, she was a member of

the protected class and she was qualified for the position she

held.  As discussed above, Plaintiff has raised a genuine issue of

material fact as to the third element by providing evidence that

she suffered an adverse employment action in the form of

termination of her employment contract.

For the fourth element, the plaintiff must show that she was

replaced by someone younger or treated less favorably than

similarly situated employees.  See Leal v. McHugh, 731 F.3d 405,

410 (5th Cir. 2013) (quoting Smith v. City of Jackson, Miss., 351

F.3d 183, 196 (5th Cir. 2003)).  Plaintiff was not replaced by

someone outside of her protected class, and she does not provide

---

[56]    See id.

evidence that her replacement was younger. Therefore, Plaintiff must show that she was treated less favorably than similarly situated employees.

Plaintiff identifies Collins, LaTanya Preston, Felycia Chatman, Augustus Belser, Elliot Johnson, and Corey Roberts as similarly situated employees, all under the age of fifty years old, who could have performed the diaper changes but were not assigned the role.[57] All identified parties were employed by NFHS during the 2013-2014 school year, most of whom worked in the special education department, and all of whom reported to Farinas.[58] None of them were required to perform diaper changes or were terminated for failing to perform diaper changes.[59]

The fact that Plaintiff identifies individuals who may be over the age of forty as similarly situated employees does not negate her claim. While the ADEA prohibits discrimination against individuals who are forty or older, the fact that the plaintiff was treated less favorably than someone who was also in the protected class will not negate the claim, as long as the discrimination occurred because of age. See O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 312 (1996)("This language does not ban discrimination against employees because they are aged 40 or older;

---

[57] See id.

[58] See id.

[59] See id.

it bans discrimination against employees because of their age, but limits the protected class to those who are 40 or older. The fact that one person in the protected class has lost out to another person in the protected class is thus irrelevant, so long as [she] has lost out <u>because of [her] age</u>."). Plaintiff has therefore raised a genuine issue of material fact that she was treated less favorably than similarly situated employees.

### 3. Defendant's Legitimate, Nondiscriminatory Reasons

Under the <u>McDonnell Douglas</u> burden-shifting framework, after the plaintiff establishes a prima facie case, the burden shifts to the defendant to establish legitimate, nondiscriminatory reasons for its actions. Defendant asserts several reasons for Plaintiff's termination, including her refusal to perform diaper changes, failure to follow Farinas' instruction to prevent an allegedly impaired teacher from driving off campus, and failure to properly report her absences.

The evidence supporting each of these reasons calls into question its legitimacy. For example, Plaintiff's account of the coworker incident suggests that Plaintiff attempted to comply with Farinas' instruction but was thwarted by the coworker's own defiance. Even viewed collectively, the court is uncertain that a jury would find that these three reasons warranted Plaintiff's dismissal under the facts of this case. Nevertheless, Defendant has met its summary judgment burden of production by proffering

these reasons that it provided to Plaintiff around the time of her termination.  A jury will have to decide whether they were legitimate.

### 4. Pretext

Assuming that Defendant can meet its burden of establishing legitimate, nondiscriminatory reasons behind its employment decision, the court proceeds to Plaintiff's final burden of establishing pretext.  As with Defendant's burden, Plaintiff's burden at this stage is one of production.

In addition to meeting her prima facie burden, Plaintiff's evidence regarding disparate treatment in the assignment of diaper-changing duties raises a genuine issue of material fact on pretext. Defendant admits that Plaintiff was given diaper-changing duty because she is female.  Defendant also admits that Collins, a younger coworker, was not required to change diapers even though she too was female, thus raising the question of discrimination based on age.  Moreover, the alleged request from J.E.'s father that no male employee change his daughter's diapers, is based on Farinas' hearsay testimony that he made the request.  Farinas' testimony about what J.E.'s father said is being offered for the truth of the matter asserted, and is thereby not competent summary judgment evidence.  Therefore, the evidence about diaper-changing duties provided by Plaintiff meets her burden of production on the issue of pretext, and the court need not discuss the additional

evidence of pretext offered by Plaintiff.

## IV.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendant's motion for summary judgment is **DENIED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.  Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

SIGNED in Houston, Texas, this 21st  day of April, 2017.


_____
U.S. MAGISTRATE JUDGE